**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HENRY UDOEWA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3054 |
| | § | |
| PLUS4 CREDIT UNION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Henry Udoewa, sued his former employer, Plus4 Credit Union, and two of its officers, the President and CEO, Vladimir Stark, and the Executive-Vice President, Patricia Collins. Udoewa asserted claims under 42 U.S.C. § 1981 for race discrimination, hostile work environment, harassment, and retaliation, and under Texas state law for negligence, intentional infliction of emotional distress, negligent hiring and retention, and defamation. (Docket Entry No. 2). The defendants have moved to dismiss the state-law claims for negligence, intentional infliction of emotional distress, and negligent hiring and retention. (Docket Entry No. 15). Udoewa has responded. (Docket Entry No. 22).

Based on the motion, the response, the parties' submissions, and the applicable law, this court dismisses the claims for negligence and intentional infliction of emotional distress. This court also dismisses the claim for negligent hiring and retention except as to Plus4 Credit Union's alleged negligent retention of Stark. The reasons for this ruling are set forth below.

**I.        Background**

Udoewa, an African-American man, began working for Plus4 Credit Union on April 17, 2001 as an accounting supervisor. He was promoted to Chief Financial Officer and Vice-President, and in June 2004, was given additional responsibilities as Vice-President of Human Resources. According to Udoewa, some time after this promotion, Plus4 Credit Union and Stark intentionally discriminated against him on the basis of race by transferring his job responsibilities as Vice-President of Human Resources to Collins, a Caucasian woman. (Docket Entry No. 2 ¶¶ 13–16).

Udoewa also alleges that he was subjected to harassment and verbal abuse by Stark "of the most severe and vulgar kind." Udoewa does not allege any specifics as to the verbal abuse. Udoewa alleges that Stark's harassment included requiring Udoewa to perform "menial jobs" and "report to tellers, persons below [Udoewa's] rank,"and "transferr[ing] [Udoewa] to another branch to assist bank tellers in the performance of their teller jobs." (*Id.* ¶¶ 23, 26). Udoewa also alleges that Stark "tormented and coerced" him to provide false testimony against Plus4 Credit Union's Director of Human Resources, Stella Thompson, during termination proceedings against her.[1] (*Id.* ¶ 23). Udoewa alleges that Stark told other employees that Yolanda Perales, an employee, had accused Udoewa of sexual harassment. (*Id.* ¶¶ 17, 44). Udoewa alleges that Stark did so to force him to testify against Stella Thompson. (*Id.* ¶ 26). Udoewa alleges that he requested an investigation into the sexual harassment claim but was denied. (*Id.*). Udoewa also alleges that he was "retaliated against" for "reporting questionable conduct" by Melissa Havel, the Vice-President of Marketing. (*Id.*). Udoewa does not specify the nature of the "questionable conduct" or the nature of the

---

[1] Udoewa does not state what the charges against Thompson were. The defendants have clarified that Thompson was terminated on May 30, 2008, allegedly due to performance deficiencies. On June 5, 2008, Thompson filed a complaint with the EEOC, which subsequently investigated the termination. (Docket Entry No. 15 at 2 n.1).

retaliation.  Udoewa alleges that he filed a harassment complaint against Stark with Plus4 Credit Union's Board of Directors, "to no avail."  Udoewa alleges that his employment was terminated on August 22, 2008, by Collins "at the behest of" Stark.  (*Id.* ¶ 24).  Udoewa asserts that "race was the motivating factor for [his] termination," but he also alleges that he was terminated because he would not provide false information in Stella Thompson's termination.  (*Id.* ¶¶ 21, 23).

Udoewa alleges that Stark is liable under Texas law for negligence because he "creat[ed] an unreasonably hostile work environment and allow[ed] it to persist without timely correction."  (*Id.* ¶ 33).  Udoewa alleges that all of the defendants, but particularly Stark, are liable for intentional infliction of emotional distress for engaging in "extreme and outrageous conduct" that caused Udoewa to experience "shame, grief, humiliation, embarrassment, anger, guilt, extreme mental anguish with physical and emotional manifestation and worry, which continues into the present."  (*Id.* ¶ 40).  Udoewa also alleges that Plus4Credit Union is liable for negligent hiring and retention because it "fail[ed] to adequately train and/or supervise and negligently hired and/or retained Defendant Stark, and other agents, employees and/or representatives."  The defendants move to dismiss these state-law claims.  (*Id.* ¶ 34).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b) (6).  The Supreme Court recently abrogated the part of *Conley v. Gibson*, 355 U.S. 41 (1957) that held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 45–46.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court held that a complaint fails to comply with Rule 8 if it does not plead "enough

3

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *Sonnier*, 2007 WL 4260892, at * 1 (quoting *Twombly*, 550 U.S. at 555).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558) (quotations omitted).  Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  *See Twombly*, 550 U.S. at 558–564.

In *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at *12 (citing *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

When a plaintiff's complaint must be dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before

dismissing the action with prejudice.  *Great Plains Trust Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. R.K. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

## III.    Analysis

The defendants have moved to dismiss Udoewa's state-law claims for negligence, negligent hiring and retention, and intentional infliction of emotional distress.  Udoewa contends that the defendants waived their right to file a motion to dismiss by also filing an answer in this case. Udoewa also contends that the pleadings sufficiently state a cause of action for each of the state-law claims.  Each issue is addressed below.

### A.    Waiver

The defendants filed an "Answer and Defenses" to Udoewa's complaint on November 8, 2008.  (Docket Entry No. 7).  This filing invoked Federal Rule of Civil Procedure 12(b), and stated that "[t]he Complaint and each of the purported causes of action or claims for relief set forth therein fail to state facts sufficient to constitute a cause of action against the Defendants upon which relief may be granted."  (*Id.* ¶ 1.01).  The document stated that the defendants denied Udoewa's complaint "without waiving the foregoing defenses."  (*Id.* ¶ 3).  On April 28, 2009, the defendants filed a

motion to dismiss the state-law claims for negligence, intentional infliction of emotional distress, and negligent hiring and retention.  (Docket Entry No. 15).  Udoewa contends that the defendants waived their right to file this Rule 12(b)(6) motion by first filing an answer, and that the defendants cannot "on one hand deny the allegations, and on the other hand allege that the paragraphs failed to state a claim under" Rule 12(b)(6).  (Docket Entry No. 22 at 2).

A motion asserting any of the Rule 12(b) defenses "must be made before pleading if a responsive pleading is allowed."  FED. R. CIV. P. 12(b).  If a Rule 12(b) motion is filed "simultaneously with the answer, the district court will view the motion as having preceded the answer and thus as having been interposed in timely fashion."  5C CHARLES A. WRIGHT *ET AL.*, FEDERAL PRACTICE & PROCEDURE § 1361, at 93 (3d ed. 2004).  "A plaintiff is not prejudiced by the filing of such motion[s] simultaneously with an answer . . . and that very filing puts the plaintiff on notice that the defendant is not waiving its right to assert the motion[s]."  *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 215 (S.D.N.Y. 1998) (quoting *Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985).  "If the defendant has previously included failure to state a claim for which relief may be granted as an affirmative defense in his or her answer to complaint, 'thereby giving notice' of the defense, then courts will generally permit a Rule 12(b)(6) motion to be filed afer the answer."  *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 575 (N.D. Tex. 2005) (quoting *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999)).

The defendants raised their Rule 12(b)(6) defense in their answer.  The case law applying the rule allows a defendant to file a Rule 12(b) motion with the answer.  Udoewa's waiver argument does not provide a basis for refusing to consider the defendants' motion to dismiss.

## B.     The State-Law Tort Claims

### 1.        The Negligence Claims Against Stark

Udoewa asserts that Stark was negligent in "creating an unreasonably hostile work environment and allow[ing] it to persist without timely correction," and "fail[ing] to do what a reasonabl[y] prudent supervisor would have done in the same or similar circumstances." (Docket Entry No. 2 ¶ 33). The defendants move to dismiss the negligent harassment claim. Udoewa alleges that Stark dispatched him to menial jobs and tried to intimidate him to provide false information about Stella Thompson through a coworker's false accusation of sexual harassment. Udoewa has not alleged negligence against Stark for the supervisor's involvement in allowing a hostile work environment.

The court in *Ramirez v. United Parcel Service, Inc.*, No. 06-1042, 2008 WL 5451022, at *7 (D.N.J. Dec. 31, 2008), addressed a complaint that similarly alleged negligent harassment:

> Count III of Plaintiff's Complaint is confusing to say the least. Plaintiff uses the language of both Negligence and Hostile Work Environment in attempting to state a cause of action. As an elementary matter of pleading, each cause of action should only state one claim. The facts alleged in Count III sound in a hostile work environment and do not sound in negligence. To the extent that Plaintiff is attempting to state a claim for negligence, he avers that Defendant has allowed its employees and others to use derogatory language, including racial epithets, toward him. There is no claim or theory of liability cognizable under the [state statutory] or common law tort which would permit this to go forward as a negligence claim.

*Id.* at *7; *see also Northland Ins. Co. v. Briones*, 81 Cal. App. 4th 796, 806 (Cal. App. 2000) ("There is simply no such thing as 'unintentional child molestation,' 'negligent harassment,' 'negligent stalking' or 'accidental intercourse.'"); *Amica Mut. Ins. Co. v. Fisher*, No. 07-1410, 2008 WL 1970639, at *14 (E.D. Cal. May 5, 2008) (same); *Tumbs v. Wemco, Inc.*, 714 So.2d 761 (La. App. 4 Cir. 1998) ("[T]here have been no cases recognizing a claim" for negligent harassment.).

Udoewa has alleged that Stark subjected him to harassment and verbal abuse "of the most severe and vulgar kind"; "tormented and coerced" him to provide false testimony against Stella Thompson; falsely accused Udoewa of sexual harassment when Udoewa refused to so testify; and engineered Udoewa's termination on the basis of race.  As in *Ramirez*, these allegations sound in intentional tort, not negligence.  Udoewa has failed to state a claim for negligence against Stark.

The defendants speculate that Udoewa's complaint could also be read as alleging that Stark was negligent in allowing other employees of Plus4 Credit Union to create a hostile work environment.  This is not a plausible interpretation.  Udoewa alleges that one employee besides Stark committed any kind of misconduct against Udoewa: Collins, by assuming some of Udoewa's job responsibilities and terminating Udoewa's employment.  Udoewa alleges that Collins acted "at the behest of" Stark.  All the allegations relate to Stark's alleged intentional wrongdoing, which sounds in intentional tort, not negligence.

Udoewa's negligence claim against Stark is flawed on another basis as well.  Under Texas law, only the corporate employer has a duty to supervise.  *Berry v. Lee*, 428 F. Supp. 2d 546, 559 (N.D. Tex. 2006).  A supervisor's individual liability under state law arises only when the supervisor owes a duty of reasonable care to the injured party that is independent of the employer's duty.  *Latch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).  In *Latch*, the Texas Supreme Court concluded that corporate officers and directors were not liable in negligence for failing to furnish the plaintiff with safety equipment because the corporation, not the individual officers, had the duty to provide a safe workplace.  The Court explained that although there was evidence that the officers "took an active role in managing the daily operations of" the employer, the officers themselves were not the plaintiff's employers.  The employer itself had a "nondelegable duty" to provide a safe workplace

8

and the officers therefore had "no individual duty" to provide the same. *Id.* at 118.  Applying *Latch*, the court in *Berry* dismissed the plaintiff's claim for negligent supervision against her supervisors because the plaintiff had failed to allege that the supervisors  "had an independent duty to give notice to her, to supervise [the employee who sexually assaulted the plaintiff], or to provide a safe workplace, apart from [their] duties arising in the course and scope of [their] employment."  428 F. Supp. 2d at 559–560.

The defendants also speculate that the complaint could be read as alleging that Stark was negligent in terminating Udoewa's and Thompson's employment, or negligent in investigating the sexual harassment allegations against Udoewa or the racial discrimination allegations that Thompson raised.  Even liberally construed, the complaint does not appear to contain such allegations.  But even if Udoewa intended to so plead, these claims would fail as a matter of law.  Udoewa does not allege facts that support a negligence claim.  Stark is alleged to have "tormented and coerced" Udoewa to intimidate him to provide false testimony against Thompson, to have spread false sexual harassment accusations, and to have directed Udoewa's termination when he refused to testify against Thompson.  These factual allegations do not support a negligence claim.

Udoewa's negligence claim against Stark is dismissed.

### 2.    The Intentional Infliction of Emotional Distress Claim Against All Defendants

Udoewa alleges that "the conduct of the Defendants, their agents, employees and/or representatives, constitutes intentional infliction of emotional distress . . . as that term is recognized under Texas common law."  Udoewa asserts that the conduct was "extreme and outrageous in nature and under the circumstances," that it proximately caused him to suffer "emotional and physical distress, including but not limited to, shame, grief, humiliation, embarrassment, anger, guilt, extreme

9

mental anguish with physical and emotional manifestation and worry, which continues into the present."  Stark in particular is alleged to have "acted intentionally or recklessly with personal animosity," which caused Udoewa "severe" emotional distress. (Docket Entry No. 2 ¶¶ 36–43). The defendants counter that "intentional infliction of emotional distress is a 'gap-filler' claim because it is only available to a plaintiff with no other remedy," and that a plaintiff can only pursue a cause of action for intentional infliction of emotional distress where "the defendant inflicted severe emotional distress in a manner so unusual that the plaintiff has no other recognized means of redress." (Docket Entry No. 15 at 12).

Under Texas law, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).  If a plaintiff's "complaints are covered by other statutory remedies, she cannot assert them as intentional infliction claims," even if the plaintiff does not invoke those remedies or those remedies are time-barred. *Id.*  "This tort was never intended as an easier and broader way to pursue claims already protected by our expanding civil and criminal laws. . . . [L]itigants and judges cannot entertain it as a catch-all that avoids the careful balancing behind alternate legal claims." *Id.* at 818; *see also Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) ("In creating the [tort of intentional infliction of emotional distress], we never intended that it be used to evade legislatively-imposed limitations on statutory claims or to supplant existing common law remedies.").

Udoewa clarifies in his response to the motion to dismiss that his claim for intentional infliction of emotional distress is based on his allegations as to "Hostile Work Environment under 42 U.S.C. § 1981" and "Defamation."  Udoewa argues that the allegations contained in these counts

10

also support his claim for intentional infliction of emotional distress.  (Docket Entry No. 22 at 6).

Because the allegations underlying the intentional infliction of emotional distress claim are the same

as those underlying the federal § 1981 and state-law defamation claims, the intentional infliction of

emotional distress claim fails.  Udoewa has invoked statutory and common-law remedies to redress

the conduct he alleges.  He cannot also assert the "gap filler" intentional infliction of emotional

distress claim.  *See Creditwatch*, 157 S.W.3d 814, 816 (finding that a plaintiff may not assert a claim

for intentional infliction of emotional distress based on a supervisor's harassment because her

complaints were covered by a state antidiscrimination statute); *Turner v. St. Luke's Episcopal Health

Sys.*, No. H-06-1668, 2008 WL 706709, at *18 (S.D. Tex. Mar. 14, 2008) (concluding that the

plaintiff had not stated a claim for intentional infliction of emotional distress because it was "based

on the same underlying conduct as her Title VII claims"); *Womack v. FedEx Kinko's Office and

Print Servs., Inc.*, No. 4:06-3818, 2008 WL 4461993, at *12 (S.D. Tex. Sep. 26, 2008) ("Womack

may not assert an intentional infliction of emotional distress claim as it is based on the same

underlying conduct as her Title VII claims."); *Brandon v. Life Care Ctrs. of Am., Inc.*, No. Civ. A.

05-4013, 2006 WL 581798, at *2 (S.D. Tex. Mar. 8, 2006) ("Because Plaintiff's tort claim for

intentional infliction of emotional distress and her Title VII claims arise from related factual

allegations of racially motivated conduct, her intentional infliction of emotional distress claim

cannot survive.").[2]

---

[2]  Udoewa contends that the gap-filler issue does not bar his claim because he has not alleged any conduct
arising under the Texas Worker's Compensation Act.  (Docket Entry No. 22 at 9).  But as the above case law
amply demonstrates, the availability of a remedy under the Texas Worker's Compensation Act is not the only
basis that will preclude a cause of action for intentional infliction of emotional distress.  Under Texas law,
intentional infliction of emotional distress is actionable only when there is no available federal or state
statutory or common-law remedy for the conduct alleged.

Udoewa's claim for intentional infliction of emotional distress is dismissed.

### 3.    The Negligent Hiring and Retention Claim Against Plus4 Credit Union

Udoewa asserts that Plus4 Credit Union "failed to adequately train and/or supervise and negligently hired and/or retained Defendant Stark, and other agents, employees and/or representatives." Udoewa states that Plus4 Credit Union "owed [him] a legal duty to hire, supervise, train, or retain competent employees," that it "breached that duty of care," and "the breach proximately caused [Udoewa's] injuries and other damages." (Docket Entry No. 2 ¶¶ 34–35). The defendants assert that Udoewa has failed to state a claim for negligent hiring and retention because he "does nothing more than recite the elements of this tort," and that these "generalized, conclusory statements" do not show "how, when, or where Plus4 breached its duty of care" to Udoewa. The defendants also argue that Udoewa "cannot establish that Defendant Stark or any other Plus4 employee committed an actionable tort against him." (Docket Entry No. 15 at 9–10).

Although Udoewa's allegations with respect to Plus4 Credit Union's alleged negligent retention of Stark are sparse, they are sufficient to survive dismissal. When considering a motion to dismiss under Rule 12(b)(6) the court must "view[ ] the complaint as a whole, rather than any one statement in isolation." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 289 (5th Cir. 2004). The complaint alleges several instances of harassment and misconduct by Stark, including a defamation claim. The complaint alleges that Udoewa "filed a complaint with the Board of Directors" about Stark's harassment, "to no avail." (Docket Entry No. 2 ¶¶ 17, 24, 26, 44). "The basis for responsibility for negligent hiring and retention is the employer's negligence in hiring or retaining an incompetent employer who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit." *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 420 (Tex.

12

App.–Dallas 2007, pet. denied).  Udoewa has alleged that he was harassed by Stark and that he filed

a complaint with the Board of Directors, putting Plus4 Credit Union on notice of the harassment.[3]

That Udoewa does not state "how, when, or where Plus4 breached its duty of care" does not render

his pleading inadequate under the liberal pleading standards of Rule 8(a).  *Cf. Dorsey v. Portfolio*

*Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[T]he who, what, when, where, and how"

standard applies to the heightened pleading requirements of Rule 9(b)).

The defendants' assertion that Udoewa "cannot establish that Defendant Stark . . . committed

an actionable tort against him" does not provide a basis for dismissing the negligent retention claim

against Plus4 Credit Union.  Udoewa has alleged that Stark committed the common-law tort of

defamation.  The defendants do not challenge the sufficiency of that claim in their motion to dismiss.

To prevail on a negligent retention claim, Udoewa must ultimately establish that Stark committed

a common-law tort against him.  *See Gonzales v. Willis*, 995 S.W.2d 729, 739 (Tex. App.–San

Antonio 1999, no pet.).  Given the defamation claim, dismissal of the claim for Plus4 Credit Union's

negligent retention of Stark is not appropriate.

Udoewa's negligent hiring and retention claims must be dismissed, however, as to Collins

and the "other agents, employees and/or representatives" Plus4 Credit Union is alleged to have

negligently hired or retained.  There is no allegation that these employees committed an actionable,

common-law tort against Udoewa.  The complaint does not allege any misconduct by any of Plus4

Credit Union's "other agents, employees and/or representatives."  The intentional infliction of

emotional distress claim against Collins has been dismissed, and the complaint does not allege that

---

[3]  This allegation supports a claim for negligent retention, but not for negligent hiring.  If Udoewa intended
to assert a claim for Plus4 Credit Union's negligent hiring of Stark, he must replead with facts alleging what
Plus4 Credit Union knew or should have known when Stark was hired.

Collins participated in the defamation claim that remains.[4]  The only remaining cause of action against Collins is Udoewa's statutory § 1981 claim, which is not an "actionable tort" for purposes of establishing a cause of action for negligent hiring or retention.  In *Gonzales v. Willis*, 995 S.W.2d at 740, the court explained that the plaintiff could not base a negligent hiring claim on an employee's violation of a state sexual harassment statute because "the effect would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law."  The court reasoned that "allow[ing] a [statutory] sexual harassment finding to supply the basis for recovery on a negligent hiring claim" would render "the statutory procedures and limitations applicable to such [statutory] claims . . . superfluous."  *Id.; see also Mumphrey v. Texas Coll.*, No. 2:05-cv-0413, 2006 WL 3498432, at *7 (E.D. Tex. Dec. 5, 2006); *Wal-Mart Stores, Inc. v. Sanchez*, No. 04-02-00458, 2003 WL 21338174, at *5 (Tex. App.–San Antonio 2003, pet. denied).  The claim against Plus4 Credit Union for the negligent hiring and retention of Collins and any "other agents, employees and/or representatives" must be dismissed.

The claim against Plus4 Credit Union for its negligent retention of Stark is sustained; Udoewa's negligent hiring and retention claim against Plus4 Credit Union is otherwise dismissed.

## IV.  Conclusion

The claims for negligence and intentional infliction of emotional distress are dismissed.  The claim for negligent hiring and retention is dismissed except as to Plus4 Credit Union's alleged negligent retention of Stark.  Udoewa may replead the negligence and negligent hiring and retention

---

[4]  The cause of action for defamation in the complaint states that the "Defendants" are liable for defamation, but the complaint alleges only that "Defendants [sic] STARK defamed the Plaintiff's character by accusing the Plaintiff of bogus sexual harassment claim and publishing such falsehood to other employees."  (Docket Entry No. 2 ¶ 17).  The complaint raises no allegations of defamation with respect to Collins.

14

claims, consistent with Rule 11, no later than **August 3, 2009**.  The intentional infliction of emotional distress claim is dismissed with prejudice, without leave to amend, because the amended complaint and applicable law show that amendment would be futile.

      SIGNED on June 29, 2009, at Houston, Texas.

                                Lee H. Rosenthal
                          United States District Judge

15